UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KATRINA BREON,

                    Plaintiff,

         -vs-

CESAR PERALES in his individual
capacity; and in his capacity as
New York Secretary of State; THE
VILLAGE OF BATH NEW YORK; THE BOARD
OF TRUSTEES OF THE VILLAGE OF BATH
NEW YORK; RALPH SENESE in his
individual capacity, and in his
capacity as Code Enforcement
Officer of the Village of Bath, New
York; DEBRA HERRICK; STEVEN SHERRY;
and RHONDA STRAWWAY,

                    Defendants.

**DECISION and ORDER
No. 6:15-cv-6335(MAT)**

---

## INTRODUCTION

     Represented by counsel, Katrina Breon ("Plaintiff") commenced
this action on May 29, 2015, alleging violations of her due process
rights under 42 U.S.C. § 1983 ("Section 1983"), as well as causes
of action for unlawful eviction and conversion under New York State
law. New York State Secretary of State Cesar Perales ("Secretary
Perales") has filed a Motion to Dismiss (Dkt #11) the Complaint
pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure
("Rule 12(b)(6)"). Plaintiff filed a Memorandum of Law in
opposition (Dkt #18). Secretary Perales did not file a reply.

     The Village of Bath ("the Village"), the Board of Trustees of
the Village of Bath ("the Board"), and Senese ("Senese")

(collectively, "the Village Defendants") also have filed a Rule 12(b)(6) Motion to Dismiss (Dkt #15) the Complaint for failure to state a claim. Plaintiff filed a Memorandum of Law in opposition (Dkt #20), to which the Village Defendants filed a Reply (Dkt #24).

For the reasons discussed below, Secretary Perales' and the Village Defendants' motions to dismiss are denied.

## FACTUAL BACKGROUND

### I. The Parties

Plaintiff, at all relevant times, rented a first-floor room at a rooming house located at 42 Belfast Street ("the Premises") in Bath, New York. Public records indicate that Rhonda Strawway is the owner of the Premises. Debra Herrick represented herself as the landlord and a property manager of the Premises. Steven Sherry represented himself as a property manager of the Premises. Ralph Senese is the Code Enforcement Officer for the Village and was appointed by the Board. Secretary Perales is the Secretary of State of New York State.

### II. Facts Underlying the Complaint

The following factual summary is based on the allegations in the Complaint ("Comp.") (Dkt #1) and Exhibit A ("Ex. A") attached thereto. During the week of July 21, 2014, the landlord of 42 Belfast Street used pesticides on the second floor of the building in response to a tenant's report of bedbugs. Plaintiff's

-2-

first-floor apartment was not infested with bedbugs and was not treated with pesticide.

On the morning of July 25, 2014, Plaintiff was informed by other residents that the house was being "posted." She then encountered Senese, Herrick, and Sherry distributing Unsafe Structure Notices, which read as follows:

> You are hereby notified that there exists an UNSAFE STRUCTURE: namely the dwelling at 42 Belfast St. Bath, NY 14810
> ▸ Said dwelling has numerous violations of the Property Maintenance Code of New York State.
> ▸ Said dwelling shall not be occupied until the violations have been abated.
> ▸ Said dwelling shall be vacated by July 25th, 2014.
> ▸ The placard shall be removed whenever the defect or defects upon which the action was based have been eliminated.
> Ordered this 25th, day of July, 2014.

Comp., Ex. A. The Unsafe Structure Notice was signed by Senese as Code Enforcement Officer and indicated that it was being issued pursuant to "19 NYCRR, Part 1226, Chapter 1&3 of the Property Maintenance Code of New York State,[1] Sections 101, 107, 108 & 308." Id.[2] Senese, Sherry, and Herrick then informed Plaintiff and the

---

[1]

Title 19, N.Y. Comp. Code R. & Regs. § 1226.1 incorporates by reference the requirements of the 2010 publication entitled "Property Maintenance Code of New York State," published by International Code Council, Inc., and applies to, inter alia, all existing residential structures in New York State. The 2010 Property Maintenance Code of New York State is not replicated in the N.Y. Comp. Code R. & Regs. but is available online at http://publiccodes.cyberregs.com/st/ny/st/b1300v10/index.htm.

[2]

The Village Code indicates that it has "adopted the Building Code of the State of New York, including the Property Maintenance Code." Bath Village Code § 86-3(A). Presumably, the Village Code is referring to the New York State Uniform Fire Prevention and Building Code, 19 N.Y. Comp. Code R. & Regs.

other residents that they had 10 to 20 minutes to gather their personal property from the building and vacate their rooms. They were told to go to the Department of Social Services to seek emergency housing.

Plaintiff alleges that she visited the Village offices later that afternoon, Senese informed her that she had 72 hours to retrieve all of her personal belongings from the rooming house.

On April 28, 2014, Plaintiff returned to 42 Belfast Street and found that all of her personal property (including furniture, clothing, and electronics) had been placed in a pile in the backyard, discarded in a dumpster on the premises, or was missing. Plaintiff contacted Herrick who informed her that she (Herrick) had been complying with Senese's instruction to clean everything out of the building. Herrick told Plaintiff that Senese said that removal of all of the tenants' personal property was necessary to avoid a fine from the Village. Plaintiff never retook possession of her room at 42 Belfast Street, and lost pre-paid rent and her security deposit.

## RULE 12(b)(6) STANDARD

The function of a Rule 12(b)(6) motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the

---

§ 1219.1. In the event of a conflict, the Property Maintenance Code supersedes local law. See N.Y. Exec. L. § 383(3) ("The provisions of . . . the uniform fire prevention and building code shall supersede any other provision of a . . . local law, ordinance, administrative code, rule or regulation inconsistent or in conflict therewith. . . .") (discussed in People v. Oceanside Inst'l Indus., Inc., 15 Misc. 3d 22, 24, 833 N.Y.S.2d 350, 352 (App. Term 2007)).

weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984) (internal quotation marks omitted). The Court must accept "all factual allegations in the complaint and draw . . . all reasonable inferences in the plaintiff's favor." Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (internal quotation marks omitted).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the announced by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). When the complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Iqbal, 556 U.S. at 679. That is, the court should ask whether the complaint pleads "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

## THE VILLAGE DEFENDANTS' MOTION TO DISMISS

### I.   Denial of Procedural Due Process (First Cause of Action)

Plaintiff asserts that her due process rights were violated by the Village Defendants' failure to provide a description of the hazard at the premises that created an imminent threat to her health and safety, see Comp. ¶ 78(a); failure to provide notice of a pre-deprivation opportunity to challenge the determination that the structure was unsafe for habitation, see id. ¶ 78(b); and failure to apprise her of the availability of pre- or post-deprivation procedures to review the determination by Senese that the structure was unsafe, see id. ¶ 78(c).

### A.   Pre-Requisites to Suit Under Section 1983

In order to maintain a Section 1983 action, two "essential" elements to an action under 42 U.S.C. § 1983 must be present: (1) "the conduct complained of was committed by a person acting under color of state law; and (2) . . . this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986)). The  parties do not dispute that Senese was acting under color of State law. See Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003) (conduct by chief of municipal code enforcement bureau undisputably constitutes state action). Likewise, Plaintiff, as a tenant-in-possession at the time of the

alleged violation, clearly has a property interest subject to constitutional protection. <u>See</u> <u>id.</u> ("The tenants enjoyed a constitutionally-protected property interest in their continued residency at Lafayette Square, and they were deprived of that interest.") (citing <u>Greene v. Lindsey</u>, 456 U.S. 444, 450–51 (1982) (concluding that continued residency in leasehold property is a "significant interest in property" subject to due process protection); other citation omitted). Because Plaintiff has alleged that she was "deprived of a constitutionally-protected property interest as a result of state action, due process is implicated and the question becomes what process is due." <u>Id.</u> (citing <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481, (1972)).

**B.   Applicable Law**

"In its simplest formulation, due process requires an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" <u>Patterson v. Coughlin</u>, 761 F.2d 886, 890 (2d Cir. 1985) (quoting <u>Armstrong v. Manzo</u>, 380 U.S. 545, 552 (1965); citation omitted)). The Supreme Court has described the type of notice demanded by due process as "'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" <u>Jones v. Flowers</u>, 547 U.S. 220, 226 (2006) (quoting <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950)). However, the Supreme Court has "rejected the

proposition that 'at a meaningful time and in a meaningful manner' always requires the State to provide a hearing prior to the initial deprivation of property." Parratt, 451 U.S. at 541. Thus, in "truly unusual" and "'extraordinary situations,'" the State may "justify postponing notice and opportunity for a hearing" until after the deprivation. Fuentes, 407 U.S. at 90 (quotation and footnote omitted). These extraordinary situations share in common several characteristics: "a special need for very prompt action to secure an important public interest," and a government official who is responsible for determining, under the standards of a "narrowly drawn statute," that it was "necessary and justified in a particular instance." Id. at 91.

C. **Analysis**

The Village Defendants assert that notice of an opportunity to be heard was unnecessary because Senese was acting pursuant to the Property Maintenance Code of New York State ("PMCNYS"), see 19 N.Y. COMP. CODE R. & REGS. § 1226.1, which contains no such provision or requirement. See Village Defendants' Memorandum of Law ("Defs' Mem.") (Dkt #16) at 4; Defs' Reply (Dkt #24) at 3. The Village Defendants are correct that the sections of PMCNYS cited in the Unsafe Structure Notice (PMCNYS §§ 101 (Title, Scope and Purpose), 107 (Unsafe Structures and Equipment), 108 (Emergency Measures), and 308 (Extermination)) do not contain such a requirement; even the sections that reference "notice" do not mention anything about

-8-

the availability of a hearing or other opportunity to be heard in the event that a structure is "condemned" as unsafe, see PMCNYS § 107.3, or found to pose an "imminent danger" to human life, see PMCNYS § 108.1. However, the fact that the Code Enforcement Officer purported to act pursuant to various sections of the State Property Maintenance Code does not mean that his actions are shielded from constitutional scrutiny. The law is well established that "[a]s a general rule, an eviction must be preceded by notice and an opportunity to be heard." Grayden, 345 F.3d at 1236 (citing Fuentes, 407 U.S. at 81–82; Thomas v. Cohen, 304 F.3d 563, 576 (6th Cir. 2002) ("Due process generally requires notice and a hearing prior to eviction.")); see also Flatford v. City of Monroe, 17 F.3d 162 (6th Cir. 1994) (Fuentes held that the due process clause requires notice and a hearing prior to eviction). Apart from pointing to the absence of a notice-of-hearing provision in the PMCNYS, the Village Defendants have cited no legal authority for their argument, which does not answer the concerns of the Federal Constitution's due process clause as discussed in, e.g., Fuentes, Flatford,  Grayden, and Thomas, supra.

    The Village Defendants alternatively argue that they were excused from providing notice of the opportunity to be heard based on "exigent circumstances." See Defs' Mem. at 5–6. According to the Village Defendants, Senese "reasonably determined that a condition to the health of the residents" existed at 42 Belfast Street, and

therefore the Court must give deference to his administrative decision to invoke emergency procedures. <u>See</u> Defs' Mem. at 6-7 (citations omitted). As the Village Defendants note, the Supreme Court has recognized the existence of "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after [eviction]." <u>Fuentes</u>, 407 U.S. at 82. However, in <u>Grayden</u>, a case factually similar to the present case, the Eleventh Circuit held that "[w]hen exigent circumstances prompt an emergency eviction, contemporaneous pre-deprivation notice [of the opportunity to be heard] is required but a pre-deprivation hearing is not." <u>Grayden</u>, 345 F.3d at 1237; <u>see</u> <u>also</u> <u>id.</u> ("But exigent circumstances do not justify the postponement of notice until after the eviction. In this regard, the tenants' interest in being informed immediately of their right to challenge the condemnation decision outweighs any countervailing government interest."). Here, the Notice of Unsafe Structure issued by Senese did not contain any pre-deprivation notice of the tenants' opportunity to challenge the decision to deprive them of their property interests by dispossessing them from the rooming house at 42 Belfast Street. Moreover, as the Village Defendants have pointed out, the code sections relied on by Senese do not contain any provisions pertaining to the provision of notice of the opportunity for a hearing.

The cases cited by the Village Defendants are not supportive of their position. In Hodel v. Virginia Surface Min. and Reclamation Ass'n, Inc., 452 U.S. 264 (1981), the plaintiff raised a constitutional challenge to a Federal statute authorizing immediate cessation orders for mine operators to protect human health and safety and the environment. Unlike the regulations at issue here, the statute in Hodel contained detailed requirements for notifying affected parties of the time, place, and subject of a hearing. See id. at 298. For instance, a mine operator aggrieved by a cessation order could immediately request temporary relief to which a response was due within five days, was afforded informal administrative review, as well as formal administrative review, including a hearing. Id. In Catanzaro v. Weiden, 188 F.3d 56 (2d Cir. 1999), the Second Circuit was asked to review a grant of summary judgment in favor of the municipal defendants. Here, the Village Defendants are asking the Court, on a motion to dismiss, to find as a matter of law that exigent circumstances existed. The Village Defendants have never explicitly stated the nature of the hazardous condition(s) on which the Unsafe Structure Notice was based. The Unsafe Structure Notice itself was vague, citing multiple provisions of the PMCNYS, without identifying which subsections of those provisions applied and why. Thus, the Village Defendants' only proof of exigent circumstances is their factually-unsupported assertion in their memorandum of law. This is

insufficient. Moreover, the inappropriateness of the Village Defendants' request is underscored by the Second Circuit's observation in Catanzaro that "where there is *competent evidence* allowing the official to reasonably believe that an emergency does in fact exist, or that affording predeprivation process would be otherwise impractical, the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion." Catanzaro, 188 F.3d at 63 (emphasis supplied). The Village Defendants' conclusory assertion that Senese acted reasonably in determining that an as-yet unidentified hazardous condition was present at the rooming house is not "competent evidence" that exigent circumstances did in fact exist. It bears noting that courts, on occasion, have found the exigent circumstances defense inappropriate for resolution even on a summary judgment motion. For instance, in Burtnieks v. City of N.Y., 716 F.2d 982 (2d Cir. 1983), the Second Circuit denied summary judgment based upon a defense of exigent circumstances, explaining that

> [u]nder Parratt, before reaching the question of the adequacy of the state remedies, a court must first find "the necessity of quick action" or "the impracticality of providing any predeprivation process." Thus, the *existence vel non of an emergency herein is a material fact* and is vigorously contested by the parties.

Burtnieks, 716 F.2d at 988 (emphasis supplied). Consequently, the Second Circuit concluded, summary judgment was improperly granted to the municipal defendants. Id. (internal quotation omitted).

Plaintiff alleges that her room had not been treated with pesticides, was not affected by bedbugs, and was not otherwise unsafe for habitation. See Comp. ¶¶ 47, 50. Thus, as in Burtnieks, the existence of an exigent circumstance is a disputed factual matter, which the Court cannot resolve on a Rule 12(b)(6) motion to dismiss.[3] Plaintiff's First Cause of Action may proceed.

### D.   Municipal Liability

A municipality such as the Village may be held liable under Section 1983 only "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1979). In other words, "recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986) (discussing Monell). In general, "a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Oklahoma City v. Tuttle, 471

---

[3]

Because the issue of exigent circumstances cannot be resolved at this juncture, the Court cannot yet determine whether the post-deprivation opportunity to be heard embodied in an proceeding pursuant to Article 78 of New York Civil Practice Law and Rules was sufficient for due process purposes.

U.S. 808, 823-24 (1985). The Village and the Board of Trustees have argued in their motion to dismiss that Senese, their duly-appointed Code Enforcement Officer, did not violate Plaintiff's due process rights when he evicted her from her rooming house without notice of the opportunity for a hearing. Thus, the Village and the Board of Trustees arguably have confirmed that it is the policy and custom to deprive citizens of their property interests without due process protections. At this juncture, the Court concludes that Plaintiff has plausibly alleged facts to support an inference that the Village and the Board of Trustees may be responsible under <u>Monell</u>.

## II.  State Law Causes of Action

### A.   Adequacy of Notice of Claim

New York State law makes filing a notice of claim a condition precedent to asserting a tort claim against a municipality." <u>See</u> N.Y. GEN'L MUN. LAW § 50-e. Section 50-e's requirements also apply to State tort claims brought as pendent claims in a Federal civil rights action. <u>Fincher v. County of Westchester</u>, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997) (citations omitted). "Any theory of liability omitted from the notice of claim may not be included in a subsequent lawsuit." <u>Jewell v. City of N.Y.</u>, No. 94 Civ. 5454(DLC), 1995 WL 86432, at *1 (S.D.N.Y. Mar. 1, 1995) (citation omitted).

The Village Defendants argue that Plaintiff's notice of claim (Dkt #15-4) fails to provide notice of her intention to assert a

conversion claim or an unlawful eviction claim, and therefore she is precluded from asserting them in this lawsuit. "The test of the sufficiency of a notice of claim is whether it includes enough information to enable the municipality to investigate the claim adequately." Lieber v. Village of Spring Valley, 40 F. Supp.2d 525, 531 (S.D.N.Y. 1999) (citation omitted). "The courts have not interpreted the statute to require that a claimant state a precise cause of action in haec verba in a notice of claim." DeLeonibus v. Scognamillo, 183 A.D.2d 697, 698 (2d Dep't 1992) (citations omitted). Instead, the courts have focused on "the nature of the claim and the theory of liability . . . ." Marino v. Chester Union Free Sch. Dist., 859 F. Supp.2d 566, 571 (S.D.N.Y. 2012) (citation omitted). Here, Plaintiff stated in the notice of claim that Senese "ordered [the Premises] vacated" and "act[ed] beyond any lawful authority to do so." Dkt. #15-4, ¶ 5. As noted above, an unlawful eviction claim under Real Property Actions and Proceedings Law ("RPAPL") § 853 simply requires the ejection of a person from real property in an unlawful manner. The notice of claim adequately alerted the Village Defendants to the nature of Plaintiff's unlawful eviction claim.

With regard to the conversion cause of action, the notice of claim stated that Senese "acted beyond his lawful authority in directing the removal and ultimate disposition of personal property belonging to [her]" which "resulted in loss of [her] personal

-15-

property." Id. Under New York law, conversion is sufficiently alleged if the owner has been deprived of her property by the defendant's unauthorized act in assuming dominion and control over that property; it is not necessary that the defendant take physical possession of the property. Glass v. Wiener, 104 A.D.2d 967, 968 (2d Dep't 1984) (landlords' direction to agent to remove and destroy of personal property owned by plaintiff's decedents resulted in unjustified act of conversion entitling plaintiff to damages) (citations omitted). The notice of claim was sufficient to notify the Village Defendants of the nature of Plaintiff's conversion claim.

### B.   Unlawful Eviction (Second Cause of Action)

#### 1.   Applicable Law

Plaintiff's second cause of action is based RPAPL § 853, which provides as follows:

> If a person is disseized, ejected, or put out of real property in a forcible *or unlawful manner, or,* after he has been put out, is held and kept out by force or by putting him in fear of personal violence *or by unlawful means*, he is entitled to recover treble damages in an action therefor against the wrong-doer.

N.Y. REAL PROP. ACTIONS AND PROC. L. § 853 (emphases supplied). "Damages for the removal, destruction or discarding of property in the course of an unlawful eviction are included under RPAPL § 853." H & P Research, Inc. v. Liza Realty Corp., 943 F. Supp. 328, 330 (S.D.N.Y. 1996) (citations omitted).

-16-

### 2.  Analysis

The Village Defendants argue that the Complaint is devoid of allegations that they "removed Plaintiff's [personal property] or caused it to be removed." Village Defs' Mem. at 13. This argument is inapposite; RPAPL § 853 deals with an individual being "put out of *real property*," not the "putting out of" an individual's personal property.

Next, the Village Defendants argue that RPAPL § 853 only applies where physical force or personal violence is utilized. In 1981, RPAPL § 853 was amended to encompass not just forceful evictions but also evictions performed in an "unlawful manner" or by "unlawful means," Maracina v. Shirrmeister, 105 A.D.2d 672, 482 N.Y.S.2d 14, 16 (1st Dep't 1984), "thereby manifesting a legislative intent to provide broad and expanded coverage to allow recovery where no force or threat is employed but an unlawful eviction nevertheless takes place." Lyke v. Anderson, 147 A.D.2d 18, 24, 541 N.Y.S.2d 817 (2d Dep't 1989). The cases relied on by the Village Defendants predate the 1981 amendment to RPAPL § 853 and are no longer good authority.

As discussed supra in connection with the due process claim, Plaintiff's Complaint alleges that she was ejected from real property (her room at 42 Belfast Street) in an unlawful manner. Therefore, the Court finds that she has alleged a plausible cause

of action under RPAPL § 853 against the Village Defendants. This claim may proceed.

### C. Conversion (Third Cause of Action)

#### 1. Applicable Law

Under New York law, the "[t]wo key elements of conversion" are (1) [the] plaintiff's possessory right or interest in the property and (2) [the] defendant's dominion over the property or interference with it, in derogation of [the] plaintiff's rights[.]" Colavito v. New York Organ Donor Network, Inc., 8 N.Y.3d 43, 49-50, 860 N.E.2d 713, 717 (2006) (internal and other citations omitted); see also Schwartz v. Capital Liquidators, Inc., 984 F.2d 53, 53-54 (2d Cir. 1993) (per curiam).

#### 2. Analysis

In Plaintiff's third cause of action, she alleges that Herrick, Sherry, Senese, and the Village of Bath "intentionally and wrongfully exercised dominion and physical control" over her personal property, resulting in "the destruction, disposal, and permanent loss" of that property. Comp. ¶¶ 86-87. The Village Defendants argue that Plaintiff has failed to allege sufficient personal involvement on their parts in the removal of her belongings from her apartment and the subsequent disposal of, or damage to, those items. See Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001) (stating that to prevail on a § 1983 claim, the plaintiff must demonstrate that a defendant was personally or

directly involved in the constitutional violation, i.e, there was "personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal.") (citing Gaston v. Coughlin, 249 F.3d 156, 165-66 (2d Cir. 2001); footnote and other citations omitted)). As the Village Defendants point out, Plaintiff does not allege that Senese was personally involved in the physical removal of her belongings from her apartment. Instead, Plaintiff asserts that when she confronted Herrick, about her damaged and discarded property, Herrick allegedly stated that "she was complying with the instruction of" Senese "to clean everything out of the premises." Comp. ¶ 58. Herrick also allegedly told Plaintiff that Senese informed her that removal of all of the tenants' personal property was necessary to avoid a fine from the Village of Bath. Id. ¶ 59. Plaintiff further states that Senese personally informed her that she had 72 hours from the posting of the Unsafe Structure Notice to clear her belongings out of her apartment.

The Second Circuit has explained that "direct participation" "does not foreclose the liability of a person who, with knowledge of the illegality, participates in bringing about a violation of the victim's rights but does so in a manner that might be said to be 'indirect'—such as ordering or helping others to do the unlawful acts, rather than doing them him—or herself." Provost, 262 F.3d at 155. The Village Defendants have not argued that the State Uniform Code, the Village Code, or any other legal source authorized the

removal of Plaintiff's property from her apartment based on the posting of the building as an Unsafe Structure. Indeed, the sections of the PMCNYS to which the Unsafe Structure Notice referred do not mention that the removal of personal property from a building deemed "unsafe" is either mandatory or authorized.

Given that this matter is still at the initial pleading stage, the Court finds that Plaintiff's allegations are sufficient to state a facially plausible claim for conversion. See Marcado v. Weinheim, 108 Misc.2d 81, 83 436 N.Y.S.2d 973 (Civ. Ct. 1981) (city marshal violated regulations when he packed and labeled cartons of evicted tenant's property, which were lost or damaged by the landlord-retained movers; the court "in no way view[ed] the marshal as having personally converted the plaintiff's property" but "his disregard of the regulations under which he is licensed, which were promulgated so as to provide safety to property of evicted tenants, was a cause of the property having disappeared"; "[t]hus, he should be held liable for such loss"). The Court accordingly will deny the Village Defendants' motion to dismiss Plaintiff's cause of action for conversion.

### D. Governmental Immunity for State Law Claims

"Although New York State has waived sovereign immunity on behalf of itself and its municipal subdivisions, 'the common-law doctrine of governmental immunity continues to shield public entities from liability for discretionary actions taken during the

performance of government functions.'" Denis v. Town of Haverstraw, 852 F. Supp.2d 405, 410 (S.D.N.Y. 2012) (quoting Valdez v. City of N.Y., 960 N.E.2d 356, 361 (N.Y. 2011); citing, inter alia, In re World Trade Cntr. Bombing Litig., 957 N.E.2d 733, 749 (N.Y. 2011) ("'[W]hen official action involves the exercise of discretion, the officer is not liable for the injurious consequences of that action even if resulting from negligence or malice.'") (quoting Tango by Tango v. Tulevech, 459 N.E.2d 182, 185 (N.Y. 1983)); other citations omitted)). The Village Defendants argue that Plaintiff's State law claims are barred by governmental immunity because Senese, in posting the Premises as unsafe under the SPMC, was acting in a discretionary capacity.

Cases involving tort liability on the part of governmental entities have consistently distinguished between discretionary and ministerial acts of government officials. Denis, 852 F. Supp.2d at 411 (collecting cases). New York State courts "take a functional approach when analyzing claims of immunity[,]" Rodrigues v. City of N.Y., 193 A.D.2d 79, 86 (1st Dep't 1993), and determining "[w]hether an action receives qualified or absolute immunity 'requires an analysis of the functions and duties of the particular government official or employee whose conduct is in issue[.]'" Parrish v. City of N.Y., 48 Misc. 3d 1212(A), 2015 WL 4460979, at *2 (N.Y. Civ. Ct. 2015) (quoting Arteaga v. State, 527 N.E.2d 1194, 1196 (1988) (citation omitted)). Thus, this issue is relatively

fact-intensive and, as such, is not amenable to resolution on a motion to dismiss. The Court accordingly will deny the Village Defendants' motion to dismiss based on State governmental immunity without prejudice, with leave to renew.

## SECRETARY PERALES' MOTION TO DISMISS

### I.   Personal Involvement

Secretary Perales asserts that Plaintiff's Complaint should be dismissed because she has failed to allege his personal involvement in any of the complained-of acts and omissions, which he states were performed by a "town code enforcement officer, not even a state employee[.]" Perales' Memorandum of Law ("Perales' Mem.") at 5. As Plaintiff points out, however, the New York State Executive Law requires the Secretary of State to promulgate regulations to establish minimum standards for code enforcement. See N.Y. EXEC. LAW § 381. The Secretary of State also is responsible for training and certifying code enforcement officers and has the authority to revoke their certification. See id. § 376-a(4)(c). The regulations implementing the SPMC are promulgated by the New York Department of State. See 19 N.Y. COMP. CODE R. & REGS. § 1203.3(f) ("Procedures shall be established for identifying and addressing unsafe structures and equipment."), § 1219.1 ("The New York State Uniform Fire Prevention and Building Code (the Uniform Code) includes . . . Part 1221 (Building Code), . . . , Part 1226 (Property Maintenance Code), Part 1227 (Existing Building Code), and Part

1228 (Additional Uniform Code Provisions). . . ."); § 1226.1 (incorporating by reference the "Property Maintenance Code of New York State").[4] The PMCNYS authorizes code enforcement officers to post structures as unsafe and unfit for human habitation. See PMCNYS §§ 107.1 ("When a structure or equipment is found to be unsafe, or when a structure is found unfit for human occupancy, or is found unlawful, such structure shall be condemned pursuant to the provisions of this code."), 108.1 ("When there is imminent danger of failure or collapse of a building or structure which endangers life, or when any structure or part of a structure has fallen and life is endangered by the occupation of the structure, or when there is actual or potential danger to the building occupants or those in the proximity of any structure because of explosives, explosive fumes or vapors or the presence of toxic fumes, gases or materials, or operation of defective or dangerous equipment, the occupants shall vacate the premises forthwith. There shall be posted at each entrance to such structure a notice reading as follows: 'This Structure Is Unsafe and Its Occupancy Has Been Prohibited by the Code Enforcement Official.' It shall be unlawful for any person to enter such structure except for the purpose of securing the structure, making the required repairs, removing the hazardous condition or of demolishing the same.").

---

[4]     Title 19 of the N.Y. Comp. Code R. & Regs. is titled, "Department of State."

Secretary Perales acknowledges that the Second Circuit standard for personal involvement by a Section 1983 defendant is shown when, <u>inter alia</u>, the "defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom[.]" <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995). As noted above, the Court finds that Plaintiff has stated a due process claim based on the actions and omissions of Senese, the Village's Code Enforcement Officer, in applying regulations promulgated by the Secretary of State. According to the Executive Law, the Secretary of State was responsible for training and certifying all State code enforcement officers, including Senese. Further, as the Village Defendants have pointed out, the regulations applied by Senese do not require the giving of notice of the opportunity to be heard to residents of structures posted as unsafe. Plaintiff has plausibly alleged that Secretary Perales was personally involved in the alleged constitutional deprivations because, by virtue of his responsibility for implementing regulations regarding code standards and training and certifying code enforcement officers, he created a policy or custom under which unconstitutional practices occurred. For the time being, Plaintiff's claim against Secretary Perales may proceed.

## QUALIFIED IMMUNITY

The defense of qualified immunity is available only when a Section 1983 claim is brought against a state official in his individual capacity, subjecting him to personal liability for any damages. See Kentucky v. Graham, 473 U.S. 159, 166-67 (1985). In the usual case, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion for failure to state a claim. Green v. Maraio, 722 F.2d 1013, 1018 (2d Cir. 1983) (citations omitted). The Second Circuit has explained that "a defendant presenting an immunity defense on a Rule 12(b)(6) motion" must meet a "stringent standard" and can succeed "only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004) (quotation omitted).

Here, only Secretary Perales has asserted a qualified immunity argument in connection with his motion to dismiss. In deciding whether a State official is entitled to qualified immunity, the Court first must determine whether Plaintiff successfully alleged facts showing the violation of a constitutional right by that official. Saucier v. Katz, 533 U.S. 194, 201 (2001) (citation omitted). Then, the Court must ask whether the right was clearly established and, if so, whether the official's conduct was objectively reasonable in light of that clearly established law. Id. at 201-02 (citation omitted). Here, the Court has found that

Plaintiff's Complaint contains sufficient allegations to assert a plausible claim that her procedural due process rights were violated in connection with the deprivation of her property rights caused by her summary eviction from her rooming house, which was based on regulations and code sections promulgated by the Secretary of State that do not provide for any type of notice of the opportunity to be heard, and which was executed by a code enforcement officer trained and licensed by the Secretary of State. The rights alleged to have been violated are, as discussed above, clearly established. The remaining issue is thus whether the individual defendants[5] sued in their individual capacities acted with the objectively reasonable belief that they were not violating Plaintiff's constitutional rights. Considering all factual allegations and the reasonable inferences therefrom in Plaintiff's favor, the Court is not prepared to rule as a matter of law that the individual defendants' conduct was objectively reasonable. Dorsett-Felicelli, Inc. v. County of Clinton, 371 F. Supp.2d 183, 193 (N.D.N.Y. 2005) (citing Sales v. Barizone, No. 03 Civ. 6691RJH, 2004 WL 2781752, at *16 (S.D.N.Y. Dec. 2, 2004) (whether defendants acted with the objectively reasonable belief that they were not violating plaintiff's constitutional rights was "fact intensive inquiry . . . ill suited for determination under these

---

[5] Although Senese has not asserted the defense, the Court, in the interest of completeness, finds that the facts as alleged in the Complaint do not entitle him to qualified immunity.

circumstances in light of the dearth of allegations set forth by either party on this motion to dismiss") (citations omitted)).

The Court's ruling should not be understood to mean that the individual defendants can never be entitled to qualified immunity; rather, the procedural posture of this case and the disputed facts make this a question best resolved through a summary judgment motion. See Barnett v. Mount Vernon Police Dep't, 523 F. App'x 811, 813 (2d Cir. 2013) (unpublished opn.) ("[D]efendants moving to dismiss a suit by reason of qualified immunity would in almost all cases be well advised to move for summary judgment, rather than for dismissal under Rule 12(b)(6) or 12(c)."). For these reasons, the request for dismissal on qualified immunity grounds is denied without prejudice, with leave to renew as part of a properly supported summary judgment motion.

### CONCLUSION

For the foregoing reasons, the Motion to Dismiss the Complaint (Dkt #11) by Secretary of State Cesar Perales is **denied.** The Motion to Dismiss the Complaint (Dkt #15) by the Village of Bath, N.Y., the Board of Trustees for the Village of Bath, N.Y., and Ralph Senese also is **denied.**

SO ORDERED.

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    November 16, 2015
          Rochester, New York